Case 2:20-cr-00385-MWF   Document 1   Filed 09/01/20   Page 1 of 8   Page ID #:1

FILED
CLERK, U.S. DISTRICT COURT
09/01/20
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
EMILY Z. CULBERTSON (Cal. Bar 282560)
Trial Attorney
United States Department of Justice
Fraud Section, Criminal Division
    300 N. Los Angeles Street, Suite 2001
    Los Angeles, California 90012
    Telephone: (202) 230-0673
    E-mail:    emily.culbertson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 2:20-cr-00385-MWF |
|---|---|
| Plaintiff, | |
| v. | **UNDER SEAL DOCUMENT** |
| RANDY PRUDENCIO GEALOGO, | |
| Defendant. | |

FILED
CLERK, U.S. DISTRICT COURT
09/01/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 2:20-cr-00385-MWF |
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud] |
| RANDY PRUDENCIO GEALOGO, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1349]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.   Blue Sky Hospice, Inc. ("Blue Sky"), was a hospice care provider located at 16935 Vanowen Street, Suite 205, Van Nuys, California 91406, in Los Angeles County, within the Central District of California.

2.   Defendant RANDY PRUDENCIO GEALOGO was a patient recruiter, also known as a "marketer," and a licensed vocational nurse ("LVN") licensed in California, who worked at Blue Sky.  Defendant GEALOGO resided in Anaheim, California, within the Central District of California.

1    3.   OWNER 1 was a co-owner of Blue Sky.

2    4.   OWNER 2 was a co-owner of Blue Sky, a registered nurse licensed in California, and the Director of Nursing ("DON") at Blue Sky.

The Medicare Program

5.   Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b) and a "federal health care program" as defined by Title 42, United States Code, Section 1320a-7b(f).

6.   Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."  Each Medicare beneficiary was given a Health Identification Card Number ("HICN") unique to that beneficiary.

7.   Hospices, physicians, and other health care providers who provided services to beneficiaries that were reimbursed by Medicare were referred to as "providers."

8.   To become eligible to participate in Medicare, Medicare required prospective hospice providers to be licensed by a state or local agency.  After obtaining the applicable license, Medicare required prospective hospice providers to submit an application in which the prospective provider agreed to (a) comply with all Medicare-related laws and regulations, including the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), which prohibits the offering, paying, soliciting, or receiving of any remuneration for the referral

2

1 of Medicare beneficiaries; and (b) not submit claims for payment to
2 Medicare knowing they were false or fraudulent or with deliberate
3 ignorance or reckless disregard of their truth or falsity.  If
4 Medicare approved the application, Medicare assigned the provider an
5 identifying number, which enabled the provider to submit claims to
6 Medicare for reimbursement for services provided to Medicare
7 beneficiaries.

8     9.   To qualify for reimbursement for hospice services, Medicare
9 required: (1) a physician to certify that the beneficiary was
10 terminally ill; and (2) the beneficiary to sign an election form
11 statement choosing hospice care instead of other Medicare benefits.
12 Medicare considered a beneficiary to be "terminally ill" if the
13 beneficiary's life expectancy was six months or less if the
14 beneficiary's illness ran its normal course.  Hospice services
15 reimbursed by Medicare were palliative in nature and included, but
16 were not limited to, medications to manage pain symptoms, necessary
17 medical equipment, and bereavement services to surviving family
18 members.  Once a beneficiary chose hospice care, Medicare would not
19 cover treatment intended to cure the beneficiary's terminal illness.
20 The election form was required to include an acknowledgement that the
21 beneficiary has been given a full understanding of hospice care,
22 including the palliative rather than curative nature of treatment,
23 and an acknowledgement that the beneficiary understood that certain
24 Medicare services were waived by the election.

25     10.  If the beneficiary had a primary care physician ("PCP"),
26 Medicare required the PCP and a physician at a hospice to certify in
27 writing that the beneficiary was terminally ill with a life
28

expectancy of six months or less, if the terminal illness ran its normal course.

11. Medicare was divided into different program "parts": Part A, Part B, Part C, and Part D. Medicare covered hospice services for those beneficiaries who were eligible for Medicare Part A (hospital-related services). When a Medicare beneficiary elected hospice coverage, the beneficiary waived all rights to Medicare Part B (covering outpatient physician services and procedures) coverage of services to treat or reverse the beneficiary's terminal illness while the beneficiary was on hospice.

12. Most providers, including Blue Sky, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

B. <u>OBJECT OF THE CONSPIRACY</u>

13. Beginning no later than in or around August 2014, and continuing through at least in or around May 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant GEALOGO knowingly conspired with OWNER 1, OWNER 2, and others known and unknown to the United States Attorney, to commit an offense against the United States, namely, health care fraud, in violation of Title 18, United States Code, Section 1347.

C. <u>MANNER AND MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED</u>

14. The object of the conspiracy was carried out, and to be carried out, in substance, as follows:

<u>Recruitment of Beneficiaries and Fraudulent Hospice Admissions</u>

a. OWNER 1 and OWNER 2 owned and operated Blue Sky.

4

b.   Shortly after defendant GEALOGO began working for Blue Sky, OWNER 1 would ask defendant GEALOGO to recruit patients for hospice care, offering to pay defendant GEALOGO an illegal kickback of approximately $800 per patient defendant GEALOGO referred to Blue Sky for each month the patient stayed on hospice.

c.   Pursuant to this agreement with OWNER 1 and OWNER 2, defendant GEALOGO would recruit Medicare patients to receive hospice care from Blue Sky knowing that they were not terminally ill.  In return, OWNER 1 and OWNER 2 would pay defendant GEALOGO illegal kickbacks of approximately $800 per month, usually in cash, for each patient who was on hospice with Blue Sky.  Of that monthly kickback amount, defendant GEALOGO would often keep approximately half and pay the recruited patients the other half in cash.  Sometimes, defendant GEALOGO would also pay the person who referred the patient to him a kickback as well.

d.   As defendant GEALOGO then knew, OWNER 1 and OWNER 2 would also pay other patient recruiters and nurses kickbacks for enrolling patients into hospice care at Blue Sky.

e.   In order to conceal the illegal kickback scheme, OWNER 1 and OWNER 2 would instruct defendant GEALOGO to lie about receiving kickback payments if anyone asked, including law enforcement.

Falsifying Patient Records

f.   Once a beneficiary was admitted to hospice at Blue Sky, defendant GEALOGO and other nurses would visit the patient and cause Blue Sky to fraudulent bill Medicare for purportedly providing hospice-related services, when, in fact, the hospice care was often not medically necessary and, in some instances, not provided.

g.   To support the fraudulent diagnoses of terminal

5

illness made by physicians and to secure payments from Medicare, defendant GEALOGO would falsify patient records, misrepresenting the patients' medical conditions to make the patients appear sicker than they really were and the treatments given to the patients to make it appear that hospice care was being provided to the patients.

   h. Defendant GEALOGO would often email the notes about his patient visits to Blue Sky and would be asked by OWNER 2 to sign patient notes when he attended Blue Sky's bi-weekly meetings to discuss patient care.  As defendant GEALOGO knew, the notes OWNER 2 asked defendant GEALOGO to sign at those meetings would often be substantively changed from the notes that defendant GEALOGO had emailed to Blue Sky, falsely portraying the patients to be even sicker than defendant GEALOGO had originally misrepresented them to be, and, at times, including fabricated patient notes for patient visits defendant GEALOGO knew he had not performed.

  15. Between 2014 and 2019, Blue Sky submitted to Medicare approximately $421,516 in false and fraudulent claims for hospice services purportedly provided to patients who defendant GEALOGO had paid to sign up for hospice services with Blue Sky and/or about whom

//
//
//
//
//
//
//

defendant GEALOGO had signed patient records that falsely represented the hospice services were medically necessary.  Medicare paid Blue Sky approximately $244,467 on those claims.

                    NICOLA T. HANNA
                    United States Attorney

*Scott M. Garringer*
*Deputy Chief, Criminal Division For:*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

ALLAN MEDINA
Deputy Chief, Fraud Section
U.S. Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
U.S. Department of Justice

EMILY Z. CULBERTSON
Trial Attorney, Fraud Section
U.S. Department of Justice