E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
NIALL M. O'DONNELL
Assistant Chief
ERIC C. SCHMALE
Trial Attorney
United States Department of Justice
Fraud Section, Criminal Division
     300 North Los Angeles Street, Suite 2001
     Los Angeles, California 90012
     Telephone: (202) 880-2251
     E-mail:    eric.schmale2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>RANDY PRUDENCIO GEALOGO,<br><br>          Defendant. | No. 2:20-CR-385-MWF<br><br><u>GOVERNMENT'S SENTENCING MEMORANDUM</u><br><u>REGARDING DEFENDANT RANDY GEALOGO</u><br><br>Date:  June 24, 2024<br>Time:  3:00 p.m. |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and the Fraud Section of the Criminal Division of the United States Department of Justice, hereby files its Sentencing Memorandum with respect to defendant Randy Gealogo.

//
//
//
//

This Sentencing Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 10, 2024                    Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        MACK E. JENKINS
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                           /s/
                                        NIALL M. O'DONNELL
                                        Assistant Chief
                                        ERIC C. SCHMALE
                                        Trial Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Randy Gealogo used his role as a licensed vocational nurse to help Blue Sky Hospice fraudulently bill Medicare for at least $421,516 in hospice services that were not medically necessary and sometimes never rendered.  This not only caused financial harm to the public, but also potentially risked the lives of patients placed on hospice who could then be unable to receive treatment for real medical conditions.

However, the government acknowledges that the defendant provided early and substantial assistance in the prosecution of his co-conspirators.  Accordingly, the government also moves pursuant to U.S.S.G. § 5K1.1 for a seven-level downward departure.

Taking into account all of these factors, the United States recommends that the Court sentence Gealogo to a three-year term of probation, and a special assessment of $100, and order Gealogo to pay $244,467 in restitution.  Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and provide deterrence to similar criminal conduct.

**II.  FACTUAL BACKGROUND**

   **A.  Procedural Background**

On October 6, 2020, Gealogo pleaded guilty, pursuant to a pre-indictment cooperation plea agreement, to a one-count information charging him with conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, as a result of his role as the nurse performing fraudulent intake exams for Blue Sky.

**B.  Offense Conduct**

As recounted in the Presentence Investigation Report ("PSR," Dkt. 65, ¶¶ 28-37), in August 2014, Gealogo began working for Blue Sky.  Shortly after his employment began, Blue Sky co-owner Arutyan Karkotsyan asked Gealogo to recruit patients for hospice care, offering to pay Gealogo an illegal kickback of approximately $800 per patient that Gealogo referred to Blue Sky for each month the patient stayed on hospice.

Pursuant to this agreement with Karkotsyan (and co-owner Patricia Moreira), Gealogo would recruit Medicare patients to receive hospice care from Blue Sky knowing that they were not terminally ill. Karkotsyan and Moreira paid Gealogo the illegal kickbacks of approximately $800 per month, usually in cash.  Of the monthly kickback amount for each patient, Gealogo would generally keep half (approximately $400) and, at Karkotsyan's instruction, pay the recruited patients the remaining half in cash.  In some instances, Gealogo had to pay the person who referred the patients to him a kickback as well, so his portion of the kickback ranged from $100 to $400 per month per patient.

As Gealogo knew, Karkotsyan and Moreira also paid other patient recruiters and nurses illegal kickbacks for enrolling patients into hospice care at Blue Sky.  Karkotsyan and Moreira instructed Gealogo to lie about receiving kickback payments if anyone asked, including law enforcement officials.  Once a beneficiary was admitted to hospice at Blue Sky, Gealogo and other nurses visited the patients and caused Blue Sky to fraudulently bill Medicare for purportedly providing hospice-related care, which was often not medically necessary and, in some instances, not provided.  To support the

2

fraudulent diagnoses of terminal illness made by physicians and to secure payments from Medicare, Gealogo generated falsified patient records by misrepresenting the patients' medical conditions to make the patients appear sicker than they really were and the treatments given to the patients to make it appear that hospice care was being provided to the patients.  Gealogo frequently emailed the patient records to Blue Sky.  Blue Sky had bi-weekly meetings to discuss patient care, and when Gealogo attended these meetings, Moreira asked Gealogo to sign the patient notes for each visit.  Often, the notes Moreira directed Gealogo to sign were substantively changed from the notes that Gealogo had emailed to Blue Sky, falsely portraying the patients as sicker than they were and sicker than they had been described in the notes Gealogo emailed to Blue Sky.  Moreira also asked Gealogo to sign patient notes for visits that Gealogo did not perform, knowing that Gealogo had not performed those visits.  Gealogo and Moreira then signed the notes, knowing that the notes were falsified.

As a result of Gealogo's participation in the scheme, between 2014 and 2019, Blue Sky billed Medicare approximately $421,516 in false and fraudulent claims.  Of this amount, approximately $244,467 worth of claims were paid by Medicare for patients Gealogo paid to sign up for hospice services with Blue Sky and/or for whom Gealogo signed falsified patient notes that purported to justify hospice services that were, in fact, unnecessary and sometimes never rendered.

**III. GUIDELINES CALCULATION**

    **A.    The Sentencing Guidelines Calculation Results in a Total Adjusted Offense Level of 15, Prior to Consideration of Section 5K1.1**

The Sentencing Guidelines range is appropriately calculated as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss Amount (More than $250,000 but less than $550,000): | 12 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Abuse of Position of Trust: | 2 | U.S.S.G. § 3B1.3 |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Zero-point Offender | -2 | U.S.S.G. § 4C1.1 |
| Total: | 15 | |

Regarding the loss amount, in the plea agreement, the parties agreed that the loss amount was at least $244,467 (corresponding to the amount paid) while the government had the right to argue for a loss of $421,51 (the amount billed). (PA at 16-17.) There is a rebuttable presumption that the billed amount is the appropriate loss amount.[1]

---

[1] Pursuant to the Guidelines, the loss amount "is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 cmt. n.3(A) (emphasis added). The Commentary to U.S.S.G. § 2B1.1 states that "[i]n cases in which the defendant is convicted of a Federal health care offense involving a Government health care program [i.e., Medicare], the aggregate dollar amount of fraudulent bills submitted to [Medicare] shall constitute prima facie evidence of the amount of the intended loss, i.e., is evidence sufficient to establish the amount of the intended loss, if not rebutted." Id., cmt. n.3(F)(viii). The Ninth Circuit and numerous other courts have reached the same conclusion that the amount billed to Medicare is the proper measure of the intended loss under U.S.S.G. § 2B1.1. See, e.g., United States v. Popov, 742 F.3d 911, 916 (9th Cir. 2014) ("[T]he amount billed to an insurer shall constitute prima facie evidence of intended loss for sentencing purposes."); United States v. Shepherd, 171 Fed. App'x 611, 615 (9th Cir. 2006) (unpublished) ("Shepherd billed for over $800,000, and thus intended to deprive Medicare of that amount, regardless of how much was actually collected.").

A 2-level enhancement applies based on the defendant's abuse of a position of public trust, pursuant to U.S.S.G. § 3B1.3. As explained in the application note, a "position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)."[2] U.S.S.G. § 3B1.3, cmt. n.1. Here, Gealogo was a licensed vocation nurse entrusted with discretion over the care of patients and the creation of medical records. However, as admitted in his plea agreement, the defendant admitted to falsifying medical records, including for patient visits that he did not perform. He abused the trust afforded by Medicare in a manner that significantly facilitated the commission of concealment of the offense and accordingly the two-level enhancement applies.

The government recommends a 3-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Probation has determined that the defendant has a criminal history category of I with no criminal history points, and is accordingly eligible for an additional 2-level decrease. PSR ¶ 58. The government does not dispute this determination.

The government objects to the two-level minor participant reduction under § 3B1.2 that is recommended in the PSR. For the patients he recruited in exchange for kickbacks, the hospice would

---

[2] The remainder of the application note reads: "Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." U.S.S.G. § 3B1.3, cmt. n.1.

5

not have had those patients but for his illegal recruitment of them. For the additional patients that he saw as a visiting nurse, his visits and the nursing notes (which were regularly falsified) were necessary for Blue Sky to bill Medicare for hospice services provided to those patients.  Furthermore, the defendant is only being held accountable for a fraction of the overall conspiracy loss of more than $2 million.

In total, prior to consideration of Guidelines Section 5K1.1, the government calculates the defendant's total offense level as 15, which corresponds with a term of imprisonment of 18-24 months.

### B. Pursuant to Rule 5K1.1, the Government Moves for a Seven-Level Downward Departure, Resulting in a Total Adjusted Offense Level of 8, and a Guidelines Range of 0-6 Months

The factors set forth for granting a departure under U.S.S.G. § 5K1.1 for substantial assistance to the government are: (1) the significance and usefulness of the defendant's assistance; (2) the truthfulness, completeness, and reliability of the information provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) the danger or risk of injury to the defendant or his family resulting from his assistance; and (5) the timeliness of his assistance.  See U.S.S.G. § 5K1.1(a).

Gealogo's information was early, significant, and useful in the prosecutions of four others that were part of the scheme. Accordingly, the government moves for a 7-level downward departure pursuant to Guidelines Section 5K1.1, which results in a total adjusted offense level of 8, and a guidelines range of 0-6 months' imprisonment.

**IV. PURSUANT TO THE PLEA AGREEMENT, THE GOVERNMENT RECOMMENDS A LOW-END GUIDELINES SENTENCE, WHICH HERE IS A PROBATIONARY SENTENCE**

In addition to the Sentencing Guidelines range, in imposing a sentence the Court should also consider the factors listed in 18 U.S.C. § 3553(a).  These include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to reflect the seriousness of the offense, and the need for adequate deterrence.

In accordance with its responsibilities in paragraph 6(d), the government is recommending a low-end guidelines sentence.  Because the guidelines range here is zero to six months, a low-end sentence would constitute probation.  Accordingly, the government recommends that the defendant be sentenced to three years' probation, which is consistent with the Section 3553A factors.

**A. A Probationary Sentence Here Provides the Appropriate Incentives and Deterrence Value for Lower-Ranking Members of Conspiracies Who Provide Substantial Assistance to the Government.**

Health care fraud is seldom committed alone.  Because such fraud schemes are so frequently carried out by multiple conspirators, the government frequently relies on cooperators to help prove the culpability of individual conspirators, including for the top conspirators who lead and organize such schemes.  The government is satisfied that here a probationary sentence provides the appropriate deterrence value, because it demonstrates to lower-ranking members of a fraud scheme that early cooperation with the government to provide substantial assistance against those more culpable will be treated fairly, but nonetheless face the consequences of a criminal conviction, including a felony record, owing restitution, and probation.  It also demonstrates to higher-ranking members of fraud

schemes that they cannot necessarily rely on the prospect of prison sentences for lower-ranking members to dissuade such individuals from admitting culpability and cooperating with the government. Accordingly, a probation sentence is appropriate for deterrence reasons here.

### B. A Term of Probation Accounts for the Defendant's Cooperation, Lack of Criminal History, and Acceptance of Responsibility

The government's recommended probation sentence accounts for the defendant's cooperation, lack of criminal history, and acceptance of responsibility. Specifically, Gealogo provided substantial assistance and cooperation by proffering with the government multiple times, including by providing information on co-participants in the conspiracy. The defendant provided this cooperation prior to any of these individuals entering plea agreements or being convicted at trial. As a result, the government is requesting pursuant to § 5K1.1 that the defendant receive a seven-level downward departure. Together with the defendant's acceptance of responsibility and timely guilty plea, which resulted in another 3-level reduction, the defendant's low-end guidelines range appropriately encompasses probation.

## V. RESTITUTION

The government requests restitution in the amount of $244,467 to Medicare, in accordance with the plea agreement. (PA ¶ 10.) The United States requests that the restitution owed to Medicare be joint and several liability with the co-conspirators convicted in this case (Nos. CR 20-418(A)-MWF, CR 21-469-MFW), as well as any other cases which the United States in its discretion deems related cases, notice of which the United States will provide to the clerk's office.

8

**VI.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court sentence defendant Randy Gealogo to a term of three years' probation, a special assessment of $100, and order restitution of $244,467.